In re EARL.

STANLEY'S INCORPORATED STORE NO. 3
v. EARL.

No. 8910.

Circuit Court of Appeals, Eighth Circuit.
Nov. 29, 1930.

M. E. Culhane, of Minneapolis, Minn., for appellant.

Emanuel Sgutt, of Fargo, N. D., for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

This case is a companion one to No. 8897. 45 F.(2d) 489. The bankrupt in that case and the bankrupt in this had been partners in the Neiderheiser-Earl Company, a corporation of Sioux Falls, S. D., engaged in the shoe business. The bankrupt in the present case had left the active management of the corporation before it failed.

This appeal is from an order of the District Court granting appellee a discharge in bankruptcy. The petition in bankruptcy was filed April 21, 1927. Adjudication of bankruptcy was April 23, 1927. Petition for discharge was filed June 16, 1927. Appellant, as objecting creditor, filed specifications September 16, 1927, in opposition to the discharge. The trial court referred the issues raised by the application and specifications of objections to a referee for examination, testimony, and report. The referee reported and made certain findings of fact and a general conclusion of law that the specifications had not been sustained, and that the bankrupt was entitled to his discharge.

Specification 1 is unimportant, being a mere reference to the claim of appellant in the sum of $2,000. Specification 2 alleges: "That with intent to conceal his financial conditions, the above named Bankrupt destroyed, concealed or failed to keep books of account, or records from which his financial condition might be ascertained."

The referee found that there was no showing that the bankrupt destroyed, concealed, or failed to keep books of account, and that, under the circumstances of the case, there was no occasion for his keeping a set of books. Bankrupt was a traveling man who had not kept any books, and in his work it would not ordinarily be expected that books of account would be kept. He was not engaged in any business of his own. The finding of the referee, sustained by the court on this specification, has our approval.

Specifications 3 and 4 we deal with later.

Specification 5 claims that the bankrupt concealed at the time of filing his petition in bankruptcy certain personal property of the value of $100 or more, to wit, an indebtedness due him from the Wegenberg Shoe Company of Milwaukee, Wis., being salary already earned. The testimony showed that bankrupt was working for this company on a commission of 3 per cent. on sales and expenses, and he had a drawing account. He testified that he owed the company money, and that he had no money coming from them; that, while the shoe company advanced traveling expenses, the $175 of drawing account was paid at the end of the month; that he received his traveling expenses every week. Commissions were credited against the $175 charged to his account. Appellant claims there was no salary owing to him for April, 1927, in excess of $100 at the time he filed his petition in bankruptcy, and that he received $175 by check April 30, 1927. Exhibit A, introduced by the bankrupt, is a statement of his account with his employer just previous to filing his petition, which shows he was overdrawn $442.91. The $175 paid the bankrupt each month was an advancement to be charged against commissions not yet earned, and, had he ceased to work on the day of filing his petition in bankruptcy, there would have been nothing coming to him. The referee's finding as to this specification would seem to be correct.

Specification No. 6 raises the question as to whether the bankrupt knowingly and fraudulently failed to set forth in his schedule in bankruptcy that he was the owner of more than $100 in cash then in his possession or under his control. The testimony of the bankrupt as to the money he had is not at all satisfactory. It is, however, uncontradicted.

Out of the $175 per month which he received in advance from his employer, he was paying $100 per month for the support of a divorced wife and a daughter. The $75 left him was not such a sum as to lead to any supposition that he had anything left after paying his expenses. This expense money was in fact a trust fund. We do not think he would be required to schedule such money, as it was advanced to him purely for expenses.

■ Specifications 7 and 8 are based on the same transaction. From Specification 7 we quote: "That the said Bankrupt, on or about the 13th day of May, 1924, by warranty deed, conveyed to Lizzie Earl, his Mother, the Southeast Quarter of Section 11, Township 106, Range 58, Miner County, South Dakota, subject to a mortgage of $4,000 given by said Bankrupt to the Madison Loan & Investment Company. That said real property was conveyed, as above set forth, in Trust for the said Bankrupt, and such Trust existed at all of the times hereinbefore set forth and still exists"—the claim of the two specifications being that the bankrupt transferred this property to his mother and that he is the real owner, she holding in trust for him. The referee found on this question that the land covered by the conveyance belonged to the bankrupt's mother at all times, and in his report said: "There is no showing of any conveyance to the mother in trust or that the Bankrupt has any interest or claim to said property or that he conveyed the same with intent to hinder, delay or defraud his creditors. These allegations are not supported by any proof or evidence." It seems to be undisputed that the bankrupt had no interest or title in this land—it belonged to his mother. She permitted him to use a mortgage she had taken back to secure the unpaid balance of purchase price in securing one of his own debts. When the mortgage was foreclosed, the sheriff's certificate was assigned to bankrupt. He deeded the land back to his mother. This transaction was three years before the bankruptcy proceedings were instituted. We think the referee and the court were correct in their findings as to this specification.

We return to specifications 3 and 4. Specification 3 is in part as follows: "That the above named Bankrupt, knowingly and fraudulently concealed at the time of the filing of his petition of Bankruptcy herein, which was about the 21st day of April, 1927, and from the Trustee of said estate to be thereinafter elected and appointed, the following described personal property belonging to the estate of said Bankrupt at said times and of the value of about $700, the particulars in regard to which are as follows: That the said Bankrupt, knowingly and fraudulently set forth in his Schedules in the above entitled Bankruptcy proceeding, that he was the owner of an automobile and that said automobile was covered by a Chattel Mortgage given by said Bankrupt previous to the filing of his Petition in Bankruptcy herein to H. J. Earl, a brother, to secure the payment of the sum of $800 that said Bankrupt, at said time, and still owes, to the said H. J. Earl. That in truth and in fact the above named Bankrupt does not owe the said H. J. Earl any sum of money, or any sum and that said pretended chattel mortgage was given for the purpose of concealing, as above set forth, the ownership of said automobile by the said Bankrupt."

And specification 4 is in part as follows: "That the above named Bankrupt knowingly and fraudulently concealed, at the time of the filing of his Petition in Bankruptcy herein, which was about the 21st day of April, 1927, and from the Trustee of said Estate to be hereinafter appointed and elected, the following described personal property belonging to the said Bankrupt at said time and of the value of more than $500, the particulars in regard to which are as follows: That said Bankrupt knowingly and fraudulently failed to set forth in his Schedules in Bankruptcy herein, that he was the owner of an interest in a Laundry Business at Alexandria, Minnesota, of the value of more than $500. That interested in said laundry business was his brother, H. J. Earl. That the said Bankrupt still is the owner of said property."

Specification 9 also refers to the automobile transaction.

The referee found as to specifications 3, 4, and 9, as follows:

"Specifications Numbers (3) and (9) concern the mortgage to the Bankrupt's brother, covering the Bankrupt's automobile. The testimony is clear and uncontradicted that this is a bona fide mortgage given for an actual indebtedness. There is no evidence to show any concealment. Both the Bankrupt and his brother testified as to the indebtedness and there is no contradicting testimony.

"There is no evidence that would sustain a finding of concealment of any interest in the laundry business at Alexandria, Minnesota, as alleged by Specification Number (4). There is no evidence of any trust to the Bank--

rupt or that the Bankrupt has any interest or claim in this laundry. The direct, uncontradicted testimony of both the Bankrupt and his brother is to the contrary."

■■ Our only doubt in this case is concerning the court's finding as to the intertwining matters covered by these specifications. In the schedules in bankruptcy filed by the bankrupt, he listed as a secured claim one of $800 to his brother, H. J. Earl; the security was a chattel mortgage on an automobile, dated March 15, 1926, and filed April 14, 1926. He did not produce the mortgage or a copy. A new mortgage was taken later when the old car was traded in for a new one. He testified that the indebtedness secured by the mortgage was bona fide, and that nothing had been paid on it. He also testified that his brother was the owner of a laundry business in Alexandria, Minn.; that he was not interested in it, but that he was at Alexandria when the laundry was purchased and gave his brother $400 on the day of purchase, which was in August, 1926; that the $400 was not given as a loan, but merely to help him get started, and was an out and out gift. The referee refused to permit counsel to inquire of the bankrupt on his examination as to what he owned outside of the automobile at the time he gave this $400 to his brother, and rejected certain tenders of proof. Counsel should have been permitted to go into this question fully, in view of the very dubious transaction of making his brother a gift of $400 within a few months after his brother had given him a mortgage of $800 on a car for indebtedness alleged to be due him from his brother. The evidence of his brother was that bankrupt owed him $800, which was secured by the chattel mortgage on the automobile; that the sums were loaned in various amounts above $10 during a period of two years when the brother was working on very small salaries. It is of course possible that the brother might have loaned these various sums to bankrupt, and that shortly thereafter bankrupt might have made him a present of $400, yet the transaction should be subject to all the light that can be thrown upon it. We think it was the duty of the trial court to go fully into the matter of the supposed gift of $400 and to permit counsel for appellant to develop fully the sources from which it was derived, the indebtedness of appellant at the time, and whether the $400 purchased a one-half interest in the laundry, was a payment on the $800 secured by the chattel mortgage, or in fact a gift, and whether appellee was

solvent at the time. The circumstances surrounding this transaction between the two brothers require fuller investigation than was given in view of the fact that the petition in bankruptcy was filed within eight months after the $400 was supposed to be given to the brother. For these reasons we reverse this case, and remand it for further hearing on the questions suggested.

Reversed and remanded.