**In re WORLEY.**

No. 305.

District Court, D. Nebraska, Chadron Division.

Oct. 17, 1942.

Anson H. Bigelow, of Omaha, Neb., for creditor Omaha Nat. Bank, as Trustee.

Leo M. Bayer, of Alliance, Neb., for debtor.

DELEHANT, District Judge.

In this voluntary bankruptcy proceeding, the referee entered a discharge in bankruptcy, over objections filed by a creditor, Omaha National Bank, as Trustee for the heirs of Thomas Dean, deceased, and after due hearing and argument of counsel and the submission and consideration of briefs.

The case is now before the court upon the creditor's petition for review by the district judge of the referee's order of discharge, in considering which, examination has been made of the files in the case, including the pleadings and the transcripts of testimony, and attention has been given to further oral arguments of counsel and supplemental briefs.

Three grounds are specified by the creditor in its objections to discharge, and reasserted in its exceptions: first, "the debtor's failure to keep books"; secondly, "concealment by fraudulent transfer of property in order to evade judgment on liability for fraud"; and, thirdly "the making of a knowingly false and fraudulent oath" in this proceeding. The court does not consider that any of these reasons is sustained by the evidence or by the record in the case. They will be considered separately but briefly.

The specification of failure to keep books is limited to the fact that the debtor did not at any time maintain any record of his business affairs and transactions. There is no averment of the destruction, mutilation, falsification, or concealment of records actually made. But the debtor is and always has been a farmer; and it is a matter of common notoriety that those engaged in that calling rarely maintain any system of bookkeeping in connection with their operations. No suspicion of irregularity attaches to the debtor for his omission; nor is a convincing suggestion made of any ensuing evil consequence, save perhaps the circumstance that the debtor is unable now to disclose from books of account the details of the substantial impairment of his financial position in the period of eleven years beginning in 1917. And there is nothing unique or suspicious in that disability. The debtor is simply not engaged in an occupation in which bookkeeping is the normal practice. So, within the meaning of 11 U.S.C.A. § 32, sub. c(2), "the court deems such * * * failure to have been justified under all the circumstances of the case." The keeping of books is not always required even of men who may correctly be regarded as business men, and the failure to keep them is not in all circumstances a valid ground for denial of discharge. Hultman v. Tevis, 9 Cir., 82 F.2d 940, 941; In re Pinko, 7 Cir., 94 F.2d 259; Dixwell v. Scott & Co., 1 Cir., 115 F.2d 873; In re Hatch, D.C., 43 F.2d 463; In re Earl, 8 Cir., 45 F.2d 492. Surely, therefore, a farmer bankrupt is not ordi-

narily to be denied the privilege of his discharge because he had failed to maintain a set of books of account.

The averment of the concealment by fraudulent transfer of property in order to evade judgment on liability for fraud rests upon the giving in 1936 by the debtor to his father of a certain note and a second chattel mortgage lien securing it as against the debtor's live stock and feed and the maintenance of this security in force in varying principal amounts and on changing identified chattels thereafter until and including the initiation of this proceeding, except for the period of something more than a year during which there was no chattel mortgage in effect from the son to the father.

■ But this allegation does not involve a true concealment. It might be held to assert the giving of a preference. But the preferential securing of a valid debt is not a statutory ground for the denial of a bankrupt's discharge. 11 U.S.C.A. 32, sub. c; Bailey v. Ross, 10 Cir., 53 F.2d 783; In re Richter, 2 Cir., 57 F.2d 159; Rutter v. General Motors Acceptance Corporation, 10 Cir., 70 F.2d 479.

The evidence upon this point has been examined critically. It discloses to the satisfaction of the court a real indebtedness from the son to the father at all material times in an amount at least equal to the outstanding evidences of debt which the chattel mortgages were respectively given to secure. The essential reality of the transactions between the parties is sustained by the participation in them of the bank through which the father and son evidently transacted their individual banking business, which consistently retained the notes and chattel mortgages for the father; and also by the punctual filing of all papers in the series.

■ The court is satisfied, therefore, that no concealment of the debtor's property, either actually in its physical parcels, or virtually through the imposition of submerging fictitious liens upon it, has been disclosed.

The inference that the debtor's alleged concealment of property was designed to "evade judgment on liability for fraud" will be considered under the third assignment for the attempted imputation of fraud in the second and third assignments rests upon the same facts.

Finally, the charge of the making by the debtor of a false oath in these proceedings is predicated upon his description in schedule A-3 of the schedules filed with his petition herein, of the judgment against him of the objecting claimant. He stated in that connection that four notes on which the judgment was founded "were real estate purchase price notes secured by real estate mortgage" upon which a deficiency judgment had been entered. This description was not strictly accurate but it was not wholly unfounded and certainly was not wilfully false or fraudulent.

The inaccuracy lies in this, that the four notes upon which the judgment was based were the unpaid notes in a series of ten notes each for five hundred dollars, originally given by the debtor and his wife in the composition and settlement at a reduced amount of a balance due to the estate now represented by the objecting creditor upon a purchase money mortgage that had been made many years earlier by a former owner of the land involved to Thomas Dean, the debt secured by which mortgage had been assumed by the debtor on his intervening purchase of the land. So, while the explanatory material in the schedule was not precisely correct, it was, nevertheless, not wholly unfounded.

Nor is the inaccuracy, in any wise, material or deceptive. The whole description of the debt points out the obligation designated in a manner which allows no confusion.

But the objecting creditor insists that the malice of the inaccuracy springs from the circumstance that, as described in the schedule, its claim against the debtor was allegedly created by a simple and innocent contract, whereas it is actually tainted with fraud in such manner that it is not dischargeable. The fraud is asserted to have been practiced in the transaction by which the settlement or reduction of the original mortgage debt was effected and the notes were given, the final four of which were merged in the creditor's judgment.

Without unnecessary narration it may be said that the paper in question is an item involved in the litigation of which one phase is discussed in the opinion of the Supreme Court of Nebraska in Federal Land Bank v. Worley, 135 Neb. 493, 282 N.W. 476, 479. After the death of Thomas Dean, deceased, who while living had sold the land in question to a predecessor in

title of the debtor and taken a purchase money mortgage thereon, the then trustee of his estate fraudulently transferred the mortgage to a conspiring third party, who as the apparent owner of it made with the debtor herein, a compromise of the mortgage debt for an amount less than was due thereon, partly by taking a substantial cash payment and the rest by receiving the notes in question. The third party's apparent ownership of the Dean mortgage was so clear upon the public records as to excite no suspicion of its regularity and validity. So far as anything now before the court discloses, the debtor acted in the utmost good faith in the transaction. It is also significant that in its opinion in Federal Land Bank v. Worley, supra, the Supreme Court of Nebraska said: "On the whole record, considered from every standpoint, the preponderance of the evidence proves that plaintiff and the Worleys acted in good faith in the transactions." And further: "As already determined, the Dean heirs had no interest in the released mortgage which they could enforce against the innocent Worleys." And the judgment constituting a claim is founded upon the notes given by the debtor and his wife in that transaction; and not upon any tortious conduct by the debtor. The objecting creditor's ultimate beneficiaries, have admittedly been the victims of shocking fraud, which in an early phase of litigation in which the Dean estate was involved, supported and sustained a decree that in equity they, through their trustee, were entitled to the beneficial ownership of the notes of the debtor to the man who had secured title to the original Dean mortgage through the trustee's fraud.

But that fraud was the act of their own former trustee and his fellow conspirator who took title to the original mortgage, in which the debtor was never involved, and for which he can not now be punished.

The whole charge of fraud against the debtor being without foundation, no point remains in the assertion that he made a knowingly false oath in his schedule in this proceeding. Similarly, there is no support for the reference in the second specification to a judgment against the debtor on liability for fraud.

An order is therefore being entered overruling and denying the creditor's petition for review and objections to discharge, and confirming the discharge of the debtor.