lee's device is necessary for the proper operation of its shaver, for the reason that no other shape would permit the cutter to move to and fro and at the same time oscillate. But the District Judge found the cylindrical shape to be unnecessary for the appellant's device because the cutter had only a reciprocating motion; that any other shape could be used in appellant's shaver head and a cutter otherwise shaped could operate just as efficiently as a cylindrical one. The court found that the appellant had no occasion to use appellee's combination and unnecessarily and knowingly imitated its rival shaver head in a nonfunctional feature, and granted the injunction.

The court found that an ordinary purchaser acting prudently would be deceived into confusing the two products. However, the defendant's president testified that the head of appellant's razor, which on close inspection can be seen to be hexagonal, though it has a cylindrical bore running through it, was functional; and no witness was called to contradict this testimony. If the hexagonal shape is truly functional, the appellant may use it. A. C. Gilbert Co. v. Shemitz, 45 F.(2d) 98 (C.C.A.2).

The District Court's findings are based upon letters sent to the appellee by customers. Affidavits as to the merchandising and operation of the shaver, the cost of advertising and salesmen, were submitted. Injunctive relief should be granted here only on testimony taken which would satisfactorily convince the trial court that the trade had come to recognize and distinguish appellee's electric shaving device by its round head; that by advertising and sales it had attained a secondary meaning among consumers, the public, and dealers; that appellee's round shaving head oscillates and reciprocates and gives, as appellee advertises, a round head shave; that the round shaving head of appellant's device is nonfunctional; that appellant's manufacture and sale of the round shaving head deceives and misleads the public into believing that it is the Packard shaver and will deceive purchasers into believing that it will give "a round head shave" when in fact, being a reciprocating one only, it does not do so. It must be shown that confusion is created and irreparable damage suffered by appellee before the appellant is enjoined. Rushmore v. Manhattan Screw & Stamping Works, 163 F. 939, 19 L.R. A.(N.S.) 269 (C.C.A.2); Yale & Towne Mfg. Co. v. Alder, 154 F. 37 (C.C.A.2); Harvey Hubbell, Inc., v. General Elec. Co., 262 F. 155 (D.C.S.D.N.Y.); Rushmore v. Badger Brass Mfg. Co., 198 F. 379 (C.C.A.2).

Because the findings made as to secondary meaning and confusion as well as the nonfunctional feature of the round head as used by the appellant are based upon letters and affidavits alone, we must reverse and direct a new trial. The issues should be tried promptly. A new trial will afford an opportunity to examine and cross-examine the witnesses who are called to establish these respective claims.

The temporary injunction granted will be reversed, with directions to grant a preference to the trial. That part of the order denying the motion to dismiss the bill is affirmed.

## In re LEVY.
### No. 16.

Circuit Court of Appeals, Second Circuit.
Nov. 1, 1937.

Benjamin Jaffe, of New York City, for appellant.

Max Perlman, of New York City, for appellee.

Before MANTON, L. HAND, and MACK, Circuit Judges.

MACK, Circuit Judge.

Dorothy Levy, a voluntary bankrupt, appeals from an order confirming a referee's report which denied her discharge on the ground of fraudulent concealment of assets, in that she omitted to schedule a tort claim consisting of an action for fraud then pending against the sole objecting creditor, Pistchal. During hearings by the referee, this action was dismissed on motion of the defendant, for failure to prosecute. Appellee raises no question as to the other specifications of objection which the referee had overruled.

All of the claims against bankrupt arose from or were incurred in connection with real estate transactions in which she had acted as dummy for her father. Because the title had been put in her name, she was plaintiff in the fraud action brought, however, clearly for the sole benefit of the father. Bankrupt's schedules were prepared by the attorney from data furnished by the father; bankrupt accepted them without knowledge of their contents. There is no contradiction in the testimony. as to these matters.

While reluctant to reverse the findings of the referee, concurred in by the District Court, on questions of fact and good faith, we can find no evidence in the record of fraudulent intent in the omission to schedule such a claim, clearly known to at least this objecting and scheduled creditor. The possibility of a hope to prosecute the fraud action after her discharge and an intent therefore fraudulently to omit the claim from the schedule of assets appear to us farfetched in the circumstances. There would appear to be no reasonable ground to doubt the truthfulness of the testimony that bankrupt relied entirely on her father's statement of assets and liabilities in the preparation of the schedules; furthermore, that she believed that this claim was her father's and not her property.

Bankrupt therefore was not guilty of a concealment with intent to hinder, delay, or defraud creditors, under section 14b (4) of the Bankruptcy Act, as amended by Act May 27, 1926, § 6, 11 U.S.C.A. § 32(b) (4), 11 U.S.C.A. § 32(b) (4). Having left everything to her father, she had no sufficient knowledge of what ought to be included in the schedules to be chargeable with fraud in the omission of at best a very doubtful asset. It is to be noted that the referee did not expressly find that the concealment was fraudulent; his report is apparently based on the erroneous assumption that she is responsible as dummy for the wrong of her principal. But the wrongful intent required by the act is personal to the bankrupt; consent to fraud of the father is not to be imputed merely from her leaving the management of affairs to him. Davis v. Jacobs, 35 F.(2d) 936 (C. C.A.1st, 1929); In re Meyers, 105 F. 353 (D.C.S.D.N.Y.1900). We are not dealing with the question of her civil liability for acts performed by her as dummy for her father and at his direction. The sole question before us is whether or not bankrupt shall be denied her personal discharge. The father's wrongs, not knowingly and fraudulently participated in by her, are no bar.

Order reversed, with directions to grant the discharge.