In re PARNELL LUMBER CO. et al.

No. 66653.

United States District Court
N. D. Ohio, E. D.

Nov. 12, 1951.

Kent W. Woodward, Clair E. Whitmer, and Donald F. Kepple, Akron, Ohio, for trustee in bankruptcy.

Henry B. Johnson, Cleveland, Ohio, Oscar Hunsicker, Jr., Wm. G. Roderick, Akron, Ohio, for bankrupt.

Wm. B. WOODS, Referee in Bankruptcy.

The Parnell Lumber Company, a partnership, consisting of Sylvia P. McDaniel, James G. McDaniel and C. E. Parnell, Jr., individually and doing business as The Parnell Lumber Company, were adjudicated bankrupts on January 17, 1950. Kent W. Woodward is the duly elected, qualified and acting Trustee in Bankruptcy.

Early in November of 1949, fearing insolvency, the Company, through its attorney, submitted a plan of operation to creditors, in which it was proposed to raise funds to continue an operation of its brokerage commission business· for such time as it could so raise funds. This notice had gone to its bankers, mercantile agencies, and creditors, who had thus been notified in September of discontinuance of its wholesale lumber business. Also it was indicated that little credit would be required, as it only needed funds for rental and clerk hire necessary to carry on such brokerage business.

A meeting of creditors was held at Akron on November 28, 1949, at which time creditors agreed to the terms of the plan and appointed a committee, a member of which was Attorney Whitmer, who later appeared as counsel in filing the involuntary petition in bankruptcy, and also as counsel for Receiver and the objecting Trustee, and who was fully informed as to the operations of this business prior to bankruptcy.

For a short time the Creditors' Committee operated the business, when the involuntary petition of creditors was filed

on December 7, 1949. On the application of counsel for Petitioning Creditors, Kent W. Woodward was appointed Receiver, to operate the business, on December 20, 1949. Adjudication of the partnership and the individual partners was consented to and was entered on January 17, 1950.

The partnership filed its Plan of Arrangement under Chapter XI, Bankr.Act, 11 U.S.C.A. § 701 et seq., on February 6, 1951 and notice thereof went to creditors. Many acceptances were received, and the plan was acceptable to all creditors voting at the meeting on March 8, 1950, but later failed and was withdrawn on March 9, because of the refusal of three creditors to pay into the estate funds which they had received from the bankrupts as preferences before the involuntary petition was filed. On the same day an order was entered, terminating Arrangement proceedings. The First Meeting of Creditors in the bankruptcy proceeding was held on March 21, 1950, at which time the Trustee was elected, and the liquidation of the estate proceeded.

Kent W. Woodward, Trustee, has filed Specifications of Objections to the discharge of bankrupt partners, C. E. Parnell, Jr. and James G. McDaniel. Two grounds of objection, substantially the same, are urged against each partner. The first ground is that they obtained money or credit by making or publishing a false statement, in writing, as to the financial condition of the partnership, upon which credit was obtained; and the second ground is that the partnership transferred property of bankrupt within twelve months with intent to prefer, defray or defraud creditors; the property transferred being two Chrysler New Yorker automobiles, and that C. E. Parnell, Jr., quitclaimed real estate in Akron, Ohio, the transferee in both instances being Wilhelmina M. Parnell, wife of C. E. Parnell, Jr., the bankrupt partner.

The pertinent statute involved is Bankr. Act, § 14, sub. c, 11 U.S.C.A. § 32, sub. c, as follows:

"c. The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; or (4) at any time * * * preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors;"

Counsel for the Trustee filed objections to discharge of the two bankrupt partners, and urged the issuing of a false financial statement by the partnership as the first ground of the specifications.

The proof shows that the partnership, The Parnell Lumber Company, began business in November 1948, with its office at Akron, Ohio, with operations at Pineville, Alabama. This succeeded a firm of the same name and its partners are as in the caption of the case. Partner Carol E. Parnell, Jr. now lives at Thomasville, Alabama, and partner James G. McDaniel lives at Monroeville, Alabama, and the other partner, Sylvia McDaniel, is the latter's wife, as to whom objections to discharge have not been filed.

The partnership early established bank connections with the First National Bank of Mobile, Alabama, and the bank took assigned accounts for collection as collateral, the transactions beginning with the month of April 1948 with a loan of $35,925, continuing each month until September 1949, with a then debt to the bank of $149,659.68. After receipt of a letter from the bankrupt about changing its business from a wholesale to a brokerage business, and suggesting that an extension might be needed for the payment of accounts, the bank called its loan on September 16, 1949, thereby ceasing to finance the bankrupt. In the preceding August of 1949 the bank loan was $199,500 and on September 16, when the bank called the loan, the debt was reduced to $134,300 (Tr. p. 13). After the bank had applied the collateral on its debt on December 7, 1949, the date of the Involuntary Petition in Bankruptcy, the debt due the bank was $22,192.75 (Tr. p. 6).

H. Austill Pharr, President of the First National Bank of Mobile, testified that he had had before him the financial statements of the bankrupt corporation, prepared by Edward J. Cooper, Accountant and Auditor of Mobile, Trustee's Exhibit 1, as of September 30, 1948; Trustee's Exhibit 2, Statement of April 30, 1949; Trustee's Mobile Exhibit 16, Report from May 1, 1947 to February 29, 1948 (Tr. p. 18); and statement from May 1, 1948 to July 31, 1948, Trustee's Mobile Ex. 17.

The Auditor's Statement from May 1, 1948 to July 31, 1948 showed bankrupt with a net worth of $45,100.25 (Trustee's Mobile Ex. 17) and in August 1948 bankrupt owed the bank $149,650 (Mobile Transcript p. 18). As to the statement of April 30, 1949 (Trustee's Ex. 2) Parnell admitted that $100,000 had been added to the accounts receivable, when a copy was sent to Dun & Bradstreet Mercantile Agency (Trustee's Ex. 3 Transcript p. 44).

When Parnell was examined as to Trustee's Exhibit 9 and the Dun & Bradstreet statement of February 17, 1949, about the figures which came from the Auditor's Report of September 30, 1948, Trustee's Exhibit 2, it appeared that there was an error (Tr. p. 66) and that the item for freight reserve of $34,076.28 was left out of the copy as sent to Dun & Bradstreet, with the result that the partnership is shown solvent, when in reality it was insolvent by some $10,000.

Counsel for Parnell points out that, notwithstanding the omission of the freight reserve item in the statement of Dun & Bradstreet, received February 17, 1949, which they issued March 8, 1949 (Trustee's Ex. 9) shows a rating of $50,000 to $75,000, and that such amount was warranted, regardless of the failure to deduct the freight reserve from item of $88,772.45 net worth, so that with such deduction the net worth would be more than $50,000. Counsel urges that the rating given by Dun & Bradstreet shows the net worth was cut from the previous statement of December 17, 1947 from $164,311 to $88,772.45 and the Dun & Bradstreet statement is made on Trustee's Exhibit 10—"Liabilities are almost double the net worth".

The grounds for refusing a discharge to a bankrupt are statutory, and as to materially false statements, there are many cases: Judge Davis said in Taback v. Arai, 3 Cir., 1927, 21 F.2d 161, 162, 10 A.B.R.,N.S., 538 that:

"Intent of the bankrupt is the touchstone by which his right to a discharge must be tested."

This case was confirmed on review in Morimura, Arai & Co. v. Taback, 1929, 297 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586, 13 A.B.R.,N.S., 277.

The cases hold that to prevent a discharge, a statement must be false and fraudulent and must be a materially false statement, and that is intentionally untrue. It was said in Re Venturella Co., D.C. Conn., 1938, 25 F.Supp. 332, 39 A.B.R.,N.S., 527, affirmed 2 Cir., 102 F.2d 1022—that a materially false financial statement, on the ground of which a bankrupt's discharge may be denied must be one, the falsity of which is known to the bankrupt and must be made in an attempt to deceive.

An early case is In re Matthews, 7 Cir., 1921, 272 F. 263, 264, 47 A.B.R. 39 where Judge Evans said:

"From our examination of the evidence, we are unable to say this finding was erroneous. That a false property statement was made is conceded. * * *"

In this Circuit in Third National Bank v. Shatten, 1936, 81 F.2d 538, 31 A.B.R.,N.S., 10, Judge Hicks adopted such rule and the syllabus is, "A false statement in writing which is enough to warrant denial of discharge must be knowingly false or made recklessly without an honest belief in its truth and with a purpose to mislead or deceive". In his opinion, Judge Hicks said, 81 F.2d at page 540:

"The right to the discharge was addressed to the discretion of the court, In re Merritt, 9 Cir., 28 F.2d 679 [13 Am.B.R.,N.S., 47]; Baash-Ross Tool Co. v. Stephens, 73 F.2d 902, supra; not to an arbitrary discretion, of course, but to its sound judicial discretion. We do not find that there was a gross abuse of the court's function. * * *"

■ The rule is that to deny a discharge, it must appear that the statement has been relied upon. This is a fact to be found from all the circumstances. The cases are reviewed in Re Pelz, 1941, 22 Ohio Op. 429, 48 A.B.R.,N.S., 786, a decision of my colleague, Hon. C. D. Friebolin, which was affirmed by District Judge Jones. Again in Collier on Bankruptcy, 14th Ed., Sec. 14.39, it is stated that under Clause (3) of Section 14, sub. c, the proof must show that the lender must have at least relied upon the false statement in extending credit, if a discharge is to be denied.

■ The burden of proving that he has not committed an act, which will prevent his discharge, is upon the bankrupt after the objector has made a prima facie case; that is, to show that there are reasonable grounds for believing bankrupt has committed the acts alleged, Sec. 14, sub. c, Provision of Bankruptcy Act, Collier 14th Ed. p. 1285, Remington Vol. IV, Sec. 3407. The substance of the objection is a materially false statement as to the bankrupt's condition, upon which he obtained credit. The statement must be relied upon, which is a fact that must be found from all the circumstances.

The proof shows that the statements made to Dun & Bradstreet were received on February 17, 1949 (Trustee's Ex. 9) and to the Lumbermen's Credit Association on August 12, 1949 and was entered September 11, 1949 (Trustee's Ex. 3).

The First National Bank had four statements from the accountant and auditor, and the proof fails that the bank relied upon any report from either of the mercantile agencies. Also, there is no proof that any other creditor than the bank ever saw or even considered the contents of the statements made to the mercantile agencies. In fact, no witness appeared for any creditor, other than the Mobile bank, showing that any creditor had received the mercantile reports. The only evidence is the general statement of Frank S. Moyer, Acting Manager of the Lumbermen's Credit Ass'n, Inc., at Chicago and Robert S. Lutz, City Reporting Manager of the Cleveland Office of Dun & Bradstreet, that the reports of the financial condition of this partnership in the lumber business at Akron, in its jurisdiction, were in the usual course of business sent to their customers from the Chicago and Cleveland offices.

This is a far cry from establishing that any other creditor of bankrupt relied on any reports of the mercantile agencies.

Counsel for the objecting trustee relies upon In re Muscara, D.C.Pa.1927, 18 F.2d 606, 607, 9 A.B.R.,N.S., 276, where a discharge was denied and the proof showed that the bankrupt had furnished false information to R. G. Dun & Co., a mercantile agency, upon which creditors relied. The proof of the case at bar fails to show that any creditor, excepting the bank, which had before it the four auditors' statements, ever relied upon the reports made by the bankrupt partnership to either of the mercantile agencies, Dun & Bradstreet or the Lumbermen's Credit Association. To the same effect is the case of Weinberg v. American Stove, 5 Cir., 1926, 15 F.2d 557, where the bankrupt sent a false statement to a mercantile agency, and this was also sent to an objecting creditor, and upon this the creditor testified he had relied. No such proof is offered by the objector in this proceeding.

■ In this Circuit, In re Crue v. Timmer, 6 Cir., 1941, 119 F.2d 145, 46 A.B.R., N.S., 174, a discharge was not denied on the ground that a bankrupt had obtained credit on the basis of a false statement, where it appeared that statement was prepared by the agent of the objecting creditor. There was no proof that the statement was ever received by the creditor, or relied upon in extending credit to the bankrupt, and it was the view of Judge Simons, speaking for the Court, that inference may not be substituted for proof. So, in the case at bar, the proof fails that the Mobile bank relied upon the statement made by the mercantile agencies, and there is further failure of proof to deny the discharge, since no other creditors were called to testify.

Proof as to the issuing of the financial statements shows that these were under the name of the partnership, The Parnell Lumber Company by C. E. Parnell, Jr. None of the statements were issued by bankrupt

partner McDaniel, and there is no evidence that he had any part in forwarding the statements or knew of their contents.

▮▮▮ Whatever may be the finding herein as to Parnell on this phase of the case, there can be no finding against Mc-Daniel for the evidence fails to show his connection therewith other than as a member of the partnership. The rule is stated in Collier on Bankruptcy, 14th Ed., Vol. I, Sec. 14.41—"A false statement of one partner in the course of a partnership business will not be a bar to the discharge of the partner, who did not participate therein and had no knowledge thereof". Case cited.

Counsel for the Trustee filed objections to the discharge on the ground that there was a fraudulent transfer by quitclaim deed of Akron real estate by Parnell to his wife, Wilhelmina M. Parnell, and the transfer of two Chrysler Sedans, owned by the partnership, to the said Wilhelmina M. Parnell. The deed was executed September 23, 1949 and the automobiles were transferred on September 26, 1949. Schedules of the bankrupt on file show the cars as assets of the partnership and the records show that the cars were sold by the Trustee and the funds are in the estate.

As before stated, because of difficult conditions in the operation of its lumber business, the partnership decided to change from wholesaling to a brokerage business, and a letter to this effect was sent to the First National Bank of Mobile from the partnership, signed by Parnell and dated September 7, 1949 (Bankrupt's Mobile Exhibit A).

In addition to the letter to its largest creditor, the bank at Mobile, on September 2 and on September 7, 1949, the partnership, by Parnell, wrote letters to the Lumbermen's Credit Association at Chicago, stating its proposed change in method of doing business (Trustee's Exhibit 1-3-4). Exhibit 3 is the report of condition on April 30, 1949, which was with the alleged change of $100,000 in accounts receivable, and was circulated by the Lumbermen's Credit Association in a letter of September 9, 1949.

Banker Pharr testifies as to the receipt of the letter from the bankrupt and there-upon the bank called its loans to the bankrupt on September 16, 1949, its debt then being $134,300, so that the debt of bankrupt was reduced to $22,192.75 at the time of bankruptcy (Tr. p. 6). Part of the accounts assigned to the bank at Mobile were reassigned by it to A. E. Reynolds of Mobile, Alabama, who was sued by the Trustee as alter ego of the bank, and these preferences to the bank and Reynolds were later set aside in the suit by the Trustee at Mobile, where a refund settlement was effected with the said First National Bank by its paying $50,000 to this bankrupt's estate and disallowing any claim of Reynolds.

Shortly after the letters to creditors about the proposed change in business of bankrupt from wholesaling to brokerage, suits were filed in the State Courts at Akron. To prevent attachments on the property of the bankrupts, their counsel advised the transfer of the Parnell real estate and the two automobiles of the partnership, which was done to Parnell's wife, to prevent judgments and preferences being secured by the more active creditors.

Bankrupt ceased its wholesaling of lumber October 1, 1949, and when creditors' efforts to collect accounts increased, counsel for the bankrupt called for a creditors' meeting (Parnell Exhibits G, H and I), which was held at Akron, but the pressure for quick payment was too much and creditors filed an Involuntary Petition on December 7, 1949, counsel for the Trustee being one of the attorneys for petitioning creditors. Receivership followed and thereupon debtors filed a Petition for an Arrangement under Chapter XI of the Bankruptcy Act. At the creditors' meeting to consider the arrangement on March 8, 1950, all creditors present voted in favor of accepting the Arrangement, but when other creditors, who had received preferences, refused to refund the payments received, or to help in the reorganization proceeding, adjudication followed.

As to those creditors, who had received preferences and prevented the Arrangement becoming effective, reports of the Trustee on file and the Court records of this case show: that the Akron real estate,

formerly belonging to partner Parnell, quitclaimed to his wife, which she held as trustee for the bankrupt estate, had been mortgaged by her to the Royal Lumber Company, for a partnership debt, and the claim of Royal has been compromised with the Trustee in Bankruptcy, and the estate has received $3,500 therefrom; the St. Marie's Lumber Company has refunded $2,000; and the last settlement was of a suit against the First National Bank of Mobile, Alabama, which has been settled by the Trustee collecting $50,000, and disallowing any claim of A. E. Reynolds, assignee of the Mobile bank. These preference settlements were all after notice to creditors, with a court hearing and a journal entry following, approving the compromise settlements.

The rule is that in order to justify the refusal of a discharge under Section 14, sub. c(4), it must be shown that the acts complained of were done with intent to defraud, hinder and delay the creditors of said bankrupt. This must be actual fraudulent intent as distinguished from constructive intent. The question of whether the bankrupt had the necessary intent is a question of fact.

Admitting as true all the facts brought out by counsel for the objecting trustee, as has often been said, it is not so much the acts of the bankrupt that will prevent his discharge, as it is the intent with which he acts. In re Tirschler & Co., D.C., 18 F.2d 365, 8 A.B.R.,N.S., 824. This was early pointed out in Re Nelson, D.C., 179 F. 320.

The intent to prefer creditors is not a substitute for the intent to hinder, delay or defraud creditors; that is to say, the court distinguishes between these situations. Collier on Bankruptcy, Vol. 7, in Section 3219, page 455, it is stated that unless the bankrupt has committed some one or more of the acts prohibited by the Bankruptcy Act, his discharge shall be granted; and Section 14, sub. c, prescribes the acts which bar discharge. Specifically, under the same section the author states: "A mere preferential transfer by the bankrupt is insufficient to bar discharge". Cases cited.

The rule was stated and applied in Re Richter, 2 Cir., 1932, 57 F.2d 159, 20 A.B.R., N.S., 516, where a partner had made a payment to his wife out of partnership funds and Judge Hand stated that while this doubtless constituted an illegal preference, it was not a transfer or concealment with intent to hinder, delay or defraud creditors, and while recoverable as preferential transfer, is not a bar to a discharge.

Recently, this Referee had a similar case, where there was a preferential transfer before bankruptcy, which was found not in fraud of creditors, and discharge was granted and affirmed on review by Judge McNamee in Re Beebe, D.C., 99 F.Supp. 308.

The finding is that objections to discharge of bankrupts should be overruled, dismissed and discharges be granted, to all of which the objector may have his exceptions.