### In re RICHTER et al.
### No. 219.

Circuit Court of Appeals, Second Circuit.
April 4, 1932.

H. & J. J. Lesser, of New York City (Jacob J. Lesser, of New York City, of counsel), for appellants.

Morris E. Packer, of Brooklyn, N. Y., for appellee trustee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The proceeding in the District Court was by Abraham Richter and David Richter for a discharge in bankruptcy. The first specification of objection to their discharge was filed by the trustee in bankruptcy. This specification was sustained by the referee, whose report was confirmed by the court, and the discharge of each bankrupt was denied.

The first specification alleged that within the twelve months preceding the filing of the petition in bankruptcy the bankrupts transferred or concealed moneys with intent to hinder, delay, or defraud their creditors as follows: (a) The bankrupt David Richter on or about the 10th day of April, 1929, drew a check in the sum of $3,000 upon a bank account belonging to the bankrupts, cashed the same, and appropriated the proceeds to his own use; (b) that on or about the 25th day of March, 1929, the bankrupt Abraham Richter drew two checks of $2,500 each upon the bank account of the bankrupts, cashed the same, and appropriated the proceeds to his own use.

The withdrawals from the firm assets were made at the times alleged in the specification; each withdrawal being within twelve months prior to the filing of an involuntary petition in bankruptcy on July 26, 1929.

There can be no doubt that at the time of the withdrawals of the $3,000 and $5,000 above mentioned, the bankrupts were insolvent. They had been forced to pledge their accounts as early as February, 1929, and, according to their schedules, borrowed altogeth-

er $39,000 from the Finance Company of Baltimore, to which the accounts were assigned. On April 23, 1929, they withdrew $10,800 in cash from their banks because they became panicky and were afraid their creditors might in some way tie up these funds. While they were required by their attorney to replace this sum of money, and did replace it, the action indicated their desperate condition. On April 26th they executed a trust deed for the benefit of their creditors. The petition in bankruptcy followed three months later because the business was found to be too moribund to justify continuance.

The proceeds of the $3,000 check withdrawn by David Richter were given to his wife, who used the proceeds to the extent of $1,000 to pay for a trip to Europe for her mother and the remainder for the living expenses of the family. It is not contended that the wife of David Richter had any claim against either of the partners or against the firm. There can be no doubt, therefore, that the finding of the referee that the $3,000 was turned over by David Richter without any pretense of a consideration for the transfer, was justified, and that it was essentially a transfer with intent to hinder, delay, and defraud creditors.

The withdrawal of $5,000 by Abraham Richter was somewhat different. In June, 1928, J. Pollack, the father of his wife, Fannie Richter, whom he married in September, 1928, had given a present to the young engaged couple of $10,000. This was evidenced by a check in that amount dated June 16, 1928, drawn to the order of Fannie Pollack and Abraham Richter on the Public National Bank & Trust Company of New York, bearing the indorsement of Fannie Pollack, Abraham Richter, and Richter Dress Company, and paid in due course. This check was deposited on July 19, 1928, to the credit of the Richter Dress Company in the American Exchange Irving Trust Company. Abraham Richter testified that this engagement present or dowry was given by his prospective father-in-law, $5,000 for use in enlarging his business, and $5,000 for furnishing the home of the couple when married. He said that at the time they were not to be married for three months, and that it was accordingly put into the business with the consent of Fannie Pollack. She testified that he told her "that he would put it in the business but any time I wanted my share of it I could have it." After her marriage Fannie Richter began to ask for payment of the $5,000, which seemed to be regarded as her share

of this check, and finally obtained it in two checks drawn on the firm bank accounts on March 25, 1929. These checks were drawn to the order of cash and indorsed by Abraham Richter. Both he and his wife testified that he gave her the money. She said that she used $1,500 of it to pay her father for a piano and the balance for furnishing their home and for living expenses.

Abraham Richter testified before the referee on several occasions that he "gave" the $5,000 to his wife, and once that he never borrowed any money from his wife (Fol. 772). Finally he made the following statement as to the transfer of the $10,000 to the firm: "I didn't think at the time that I put in that $10,000, I didn't think that $5,000 of it was going to be put in as my contribution and $5,000 of my wife's. This was being put as an investment into the business but I certainly had no thought about that whatever that whenever my wife needed money to fix up her home, I would be able to make a withdrawal as against my interest in the business."

While the testimony of Abraham Richter as to the legal relations arising out of the transfer of the $10,000 check to the Richter Dress Company was perhaps somewhat confused, it seems unreasonable to suppose that any transfer of moneys belonging to Fanny Pollack could properly be treated as a gift to the firm. It must be remembered that at the time of the transfer she was not married, and the business was not one of which her prospective husband was the sole owner, but in which his brother had a one-third interest. In such circumstances, the only reasonable interpretation of the transaction is that based on Fanny Richter's testimony that Abraham Richter told her that he would put the money "in the business but any time I wanted my share I could have it."

While the repayment to Fanny Richter on March 25, 1929, doubtless constituted an illegal preference, because made within four months prior to the date of the filing of the petition in bankruptcy, it was apparently nothing more and was not a transfer or concealment with intent to hinder, delay, and defraud creditors. Such a payment of an existing debt, even though recoverable as a preferential transfer, is not a bar to a discharge. Farmers' Savings Bank v. Anton (C. C. A.) 1 F.(2d) 103; In re Bouck (D. C.) 199 F. 453; In re Maher (D. C.) 144 F. 503. See, also, Sargent v. Blake (C. C. A.) 160 F. 57, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58.

For the foregoing reasons, the order is reversed in so far as it denies a discharge to Abraham Richter individually and as copartner, with directions that a discharge be granted to him in each capacity, but, in so far as it denies a discharge to David Richter individually and as copartner, the order is affirmed.