In the Matter of Martha NEMEROV, Bankrupt.

United States District Court
S. D. New York.
Oct. 10, 1955.

Simpson, Thacher & Bartlett, New York City, for trustee, Robert S. Carlson, New York City, of counsel.

Schwartz, Rudin & Duberstein, New York City, for bankrupt, Max Schwartz, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Petitioner, trustee in bankruptcy of Martha Nemerov, moves this Court to review the order of a referee which dismissed trustee's Specification of Objections to Discharge and directed discharge of the said bankrupt. On February 17, 1955, Martha Nemerov filed a voluntary petition in bankruptcy in this court and was adjudicated a bankrupt on that date. Petitioner filed the following Specification of Objections to the discharge of said bankrupt:

"1. On November 4, 1954, subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy herein, the bankrupt transferred certain of her property by check consisting of the following sums of money:

"(a) $500 to Mrs. Allen Kranen

"(b) $500 to Mrs. Albert Lipset

with intent to defraud her creditors." [1]

Mrs. Kranen and Mrs. Lipset are daughters of the bankrupt. A hearing on these specifications was held before the referee who found that the checks were given to help meet the living expenses of her daughters, who were encountering financial difficulties, and that the bankrupt did not make these transfers with intent to hinder, delay or defraud her creditors and that she was therefore entitled to discharge. Petitioner avers that the circumstances surrounding the gifts were such that the referee's findings were incorrect as a matter of law and fact.

On October 23, 1954, Martha Nemerov was served with a summons and complaint in an action instituted by Manufacturer's Trust Company in the Supreme Court of the State of New York to recover $60,717.30. The action was based on her guarantee of the obligations of Will Nemerov, Inc., her husband's corporation. Three days later, she closed out her sole savings account by withdrawing the sum of $360.40, and on November 4, 1954, she made out the specified checks to her two daughters, leaving a balance of $751.63 in what was then her sole bank account. Petitioner avers that these facts, coupled with bankrupt's admission that she knew in early fall that her husband was experiencing business difficulties, are sufficient to compel an inference of intent to defraud, even though Mrs. Nemerov was not then bound by any court order or subpoena restraining her from making any payments pending the conclusion of the suit against her. Petitioner contends that either the facts here created a conclusive presumption against Mrs. Nemerov, foreclosing any contrary showing of actual intent, or, in the alternative, that these facts created a prima facie case against her which was not rebutted.

---

[1]. Title 11, U.S.C.A. § 32 provides in part:
"Discharges, when granted
   *     *     *     *     *

"(c) The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, * * * any of his property, with intent to hinder, delay, or defraud his creditors; * * *

*Provided,* That, if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

Petitioner supports his first contention, that an outright gift by bankrupt during the twelve month statutory period creates a conclusive presumption of fraud, by reference to several cases[2] based on a 1914 dictum by the Second Circuit in In re Julius Bros., 1914, 217 F. 3, L.R.A.1915C, 89. This dictum, however, has not been followed recently, and later cases indicate that the language of Julius went too far, and that under the statute, the making of such a gift merely sets forth a prima facie case of fraudulent intent and shifts the burden of proving the contrary to the defendant.[3]

■■■■■ It is clear that there must be actual intent to defraud; constructive intent is not sufficient to bar discharge.[4] This view is buttressed by a comparison of the discharge provisions of the Bankruptcy Act with the provisions of that Act relating to setting aside conveyances which are deemed fraudulent as to creditors. The conveyance section states that a transfer is fraudulent "if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, *without regard to his actual intent*".[5] The provision relating to discharge contains no such specific and conclusive language.[6] It is, therefore, reasonable to assume that if Congress had intended to foreclose proof of intent in dealing with fraudulent transfers which bar discharge, it would have used more specific language.

The question now arises, did bankrupt carry her burden of rebutting the inference against her arising from the mere fact of her making a gift of a large part of her assets during the statutory prohibition period. At the hearing, the only witnesses who testified were bankrupt and her daughter, Mrs. Lipset. The bankrupt testified that although she had known that her husband was encountering some business difficulties in the fall of 1954, a sustained illness had prevented her from going to the business office from August 1954 until the windup of the business. She testified that at the time she made out the checks to her daughters, she did not know that a suit had been started against either herself or her husband, that she had signed some papers in the fall when she was ill, but had not read them and assumed they were for her husband. She and Mrs. Lipset testified that the daughter was in financial straits, and that bankrupt had been accustomed to helping her daughter out with gifts ranging from $5 to $500. The daughter further testified that the money she received was used to pay food, rent and medical bills and was used up in a few months, and at that time she had known nothing of her parents' personal financial condition. Also it was stipulated that the other daughter, Mrs. Kranen, if called, would testify similarly. The referee believed the tes-

2. In re Richter, 2 Cir., 1932, 57 F.2d 159; In re Beckman, D.C.W.D.N.Y.1934, 6 F. Supp. 957; In re Finder, 2 Cir., 1932, 61 F.2d 960 (dictum) certiorari denied Finder v. Smith, 1933, 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1484; Bailey v. Ross, 10 Cir., 1931, 53 F.2d 783 (dictum); In re Casey, D.C.E.D.N.Y.1944, 57 F. Supp. 805 (dictum).

3. Rothschild v. Lincoln Rochester Trust Co., 2 Cir., 1954, 212 F.2d 584; In re Wolf, 3 Cir., 1948, 165 F.2d 707; In re Kearney, 2 Cir., 1940, 116 F.2d 899; Dixwell v. Scott & Co., 1 Cir., 1940, 115 F.2d 873; In re Feynman, 2 Cir., 1935, 77 F.2d 320; In re Woods, 2 Cir., 71 F. 2d 270, certiorari denied 1934, 293 U.S. 601, 55 S.Ct. 117, 79 L.Ed. 693. See 1

Collier, Bankruptcy 1382-83 (14th ed. 1940).

4. In re Wolf, 3 Cir., 1947, 165 F.2d 707; In re Beggs, D.C.N.D.Ohio, 1950, 93 F. Supp. 863. The presumption of fraudulent intent can be explained away even where a transfer has stripped bankrupt of all his assets. See In re Kearney, 2 Cir., 1940, 116 F.2d 899. See also In re Lee, D.C.N.D.Ga.1931, 51 F.2d 394; In re William Tirschler & Co., D.C.E.D. N.Y.1926, 18 F.2d 365 (Giving money to wife for living expenses does not bar discharge when done without fraudulent intent).

5. 11 U.S.C.A. § 107, sub. d(2)(a) (italics supplied).

6. See Note 1, supra.

timony of the bankrupt and her daughter.

█ General Order in Bankruptcy No. 47, 11 U.S.C.A. following § 53, provides that the judge shall accept the referee's findings of fact unless they are clearly erroneous, and that rule has been strictly enforced in this circuit, especially where credibility is a key factor.[7] Here, the referee had the opportunity to hear and observe the witnesses, and I cannot say that their testimony is incredible as a matter of law. Bankrupt has borne her burden of rebutting any presumption of fraudulent intent which arose from her making this gift within twelve months of bankruptcy. The discharge granted by the referee shall stand.

Motion denied. So ordered.

7. In re Gurinsky, 2 Cir., 1952, 196 F.2d 296; Knetzer v. Larkin, 2 Cir., 1949, 178 F.2d 532 (dictum); Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975; In re Barry, D.C.E.D.N.Y. 1943, 52 F.Supp. 496, affirmed per curiam, Barry v. Morris Plan Industrial Bank, 2 Cir., 1944, 141 F.2d 1021.