In the Matter of Max R. SIMON, Bankrupt.

No. 53040.

United States District Court
E. D. New York.

July 31, 1961.

Sherman D. Warner, Jamaica, N. Y., Referee in Bankruptcy.

Goldman, Horowitz & Cherno, Mineola, N. Y., for bankrupt, Max R. Simon, Valley Stream, N. Y., of counsel.

Julius R. Oltarsh, New York City, for objecting creditor.

BARTELS, District Judge.

This is a petition to review the findings of fact and conclusions of the Referee in Bankruptcy made on March 28, 1961 in overruling the objections by the objecting creditor to the bankrupt's discharge. A similar review was sought of a prior decision of the same Referee dated November 6, 1957 and was granted on January 30, 1958 by Judge Byers directing the Referee to hold a further hearing and to take further evidence with regard to certain specific issues set forth in his order dated February 26, 1958. In substance, the basis for the objections is that the bankrupt who owned 50 of the 100 issued and outstanding shares of Domestic Employment Center, Inc., transferred said shares to the other stockholder, one Abraham Fine, for $1 with intent to hinder, delay and defraud his creditors, thus barring his discharge under Section 14 of the Bankruptcy Act. The transfer of said stock occurred on July 14, 1955, within a year of the petition, and was made, according to the bankrupt, pursuant to a restrictive covenant agreement between the bankrupt and Fine dated March 24, 1953, providing, among other things, for cross-options to the two stockholders of this closed corporation upon certain contingencies. A voluntary petition in bankruptcy was filed on March 22, 1956 and the order granting the discharge was dated November 14, 1957.

After approximately 600 pages of additional testimony, numerous additional exhibits, voluminous briefs and protracted proceedings, the Referee has made further findings of fact and conclusions of law and has again overruled the objections and specifications of the objecting creditor. The record is long and the proceeding is unnecessarily voluminous and tedious. An outline of the issues appears in Judge Byers' opinion and also in the Referee's decision and it will be unnecessary for this Court to burden the record with a further summary of the facts.

The Referee has again found, *inter alia*, that the bankrupt was bound by the terms of the stockholders' agreement, that the transfer of the bankrupt's shares, was pursuant to the stockholders' agreement, that Fine's right to purchase had not expired on July 14, 1955, that in making the transfer the bankrupt relied in good faith upon the valuation of the shares set forth in accountant Sperber's letter of July 12, 1955, that the bankrupt believed the shares to have "a negative value", that he did not know of "any hidden value of the shares at that time", that the bankrupt believed he was bound by the stockholders' agreement and was so advised by his attorney Stein, that the transfer was made in good faith and that there was no obligation on the part of Fine to pay any value in excess of the book value of the shares in accordance with the formula in the stockholders' agreement and further, that there was no agreement or option between Fine and the bankrupt for the return of the stock. In computing the book value of the stock in accordance with the formula the Referee relied upon the accounting theories of two expert accountants, one the bankrupt's accountant associated with Alfred Sperber and the other, an accountant retained by the bankrupt for the purpose of testifying as an expert witness. The positions taken by these accountants were opposed by the accountant on behalf of the objecting creditor, who incidentally had rendered accounting services to Domestic well after July 14, 1955 and whose theories produced a higher valuation.

After examination of the record the Court has concluded that the paramount issue here is the intent or good faith of the bankrupt in making the transfer. Whether or not the agreement was valid or the transfer was made pursuant to the agreement or the computation of the value of the stock was in accordance with the formula therein described, becomes unimportant if in fact the bankrupt in

making the transfer acted in good faith without intent to defraud creditors. Much evidence has been adduced with respect to the value of the stock and various accounting theories employed in computing this value upon the theory that if the stock had value the transfer was invalid. A question has also been raised as to the existence of Fine's right to purchase the stock on July 14, 1955 under the terms of the agreement. The Referee found that the stock had no value under the agreement formula and that there was not an iota of proof which indicated that the bankrupt knew that the stock had value or that he had any reason to know that accountant Sperber's letter stating a negative value was untrue. The Referee concluded that at least as between the bankrupt and Fine the agreement was binding and that the bankrupt believed he was bound by the terms thereof when he made the transfer.

Most of the arguments attacking the Referee's findings are based upon an attack upon the credibility of the witnesses and upon suspicion and inferences which the Court is asked to draw from the various relationships of the parties. The objecting creditor also asserts that the Referee's interpretation of the agreement is erroneous as a matter of law. If the findings of fact of the Referee are accurate the interpretation of the agreement becomes immaterial. As indicated in Margolis v. Nazareth Fair Grounds & Farmers Market, 2 Cir., 1957, 249 F.2d 221, 223, the "clearly erroneous" rule is strictly enforced in this circuit, the Court stating:

"The findings of fact of a referee in bankruptcy will not be disturbed unless they are 'clearly erroneous.' General Order in Bankruptcy 47, 11 U.S.C.A. following § 53. This requirement of Order 47 'has been strictly enforced in this circuit, especially where credibility is a key factor.' In Matter of Nemerov, D.C. S.D.N.Y.1955, 134 F.Supp. 678, 681. Here the facts were in dispute and the findings of the referee based in part on his judgment of the credibility of the witnesses who testified before him must be given great weight. See Rasmussen v. Gresly, 8 Cir., 1935, 77 F.2d 252, 254, wherein Judge Sanborn said, 'A different rule would virtually make * * * a trial de novo.' "

■ The basis of the objection to the discharge is that the bankrupt has violated the proscription of Section 14, sub. c(4) of the Bankruptcy Act, 11 U.S.C.A. § 32 sub. c(4), in that he transferred or concealed his property "with intent to hinder, delay, or defraud his creditors". In explaining the requirements of this bar the court said in In re Pioch, 3 Cir., 1956, 235 F.2d 903, at pages 905–906:

"To bar the bankrupt's discharge there must be an actual fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors and constructive intent is not sufficient; the reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural; speculation cannot be substituted for proof and the requirement is for probative facts capable of supporting, with reason, the conclusions of the trier of fact; the burden of proof is on the objecting creditor to prevent the bankrupt's discharge, otherwise stated, the objecting creditor must make out a prima facie case; * * and 'it is not so much the acts of the bankrupt that will prevent his discharge, as it is the intent with which he acts.' "

Accord, In Matter of Nemerov, D.C.N.Y. 1955, 134 F.Supp. 678; In re Richter, 2 Cir., 1932, 57 F.2d 159; In re Parnell Lumber Co., D.C.Ohio 1951, 107 F.Supp. 794.

■■ Here the Referee had an opportunity to hear and see the witnesses and his findings must be accepted unless it clearly appears that he has been mistaken. This is particularly true when the motive and intent of the bankrupt becomes material. In re Slocum, 2 Cir., 1927, 22 F.2d 282; In re Gordon & Gel-

berg, 2 Cir., 1934, 69 F.2d 81. In the present case the Court is asked to substitute speculation and suspicion for evidence and proof. There is nothing in this record which would enable the Court to state that the finding of the Referee on the crucial point of good faith and lack of intent to defraud is clearly erroneous. Under the circumstances the Court adopts and confirms the Referee's findings, overrules the objections thereto, and directs the entry of an order accordingly.