In the Matter of Marcel **FREUDMANN**,
Bankrupt.

No. 70 B 393.

United States District Court,
S. D. New York,

July 3, 1973.

**430**

Samuel B. Ohlbaum, New York City, for bankrupt.

Jaspan & Kaplan, Garden City, N. Y., for trustee by Arthur W. Jaspan, A. Thomas Levin, Garden City, N. Y., of counsel.

GURFEIN, District Judge.

This is a petition to review an order of Referee Asa S. Herzog denying a discharge in bankruptcy. After the filing of an involuntary petition in bankruptcy on May 28, 1970, the petitioner was adjudged a bankrupt on June 4, 1970. The petitioner was originally denied his discharge by order dated July 12, 1971. On a review of that order, this Court remanded the matter with directions to permit the bankrupt to present additional testimony relating to the one specification of objection to discharge which had been sustained. At hearings held on March 2 and April 21, 1972, the bankrupt gave additional testimony. Referee Herzog remained unpersuaded, and by an order dated February 7, 1973 again denied discharge. Thereupon the bankrupt filed this petition for review.

The one specification which was sustained alleged:

"That on and after May 29, 1969, subsequent to the first day of the 12 months immediately preceding the filing of the petition the bankrupt transferred certain of his property, to wit, diamonds to [certain persons] . . . for an inadequate consideration with intent to hinder, delay or defraud his creditors."

The discharge was refused under Section 14c(4) of the Bankruptcy Act, 11 U.S.C. § 32c(4).[1]

The learned Referee found many instances where the bankrupt bought diamonds on credit and sold them for cash on approximately the same day at a loss. He specifically found fifteen situations where that had occurred. Referee Herzog held that "the bankrupt practiced a fraud on each and every creditor from whom he obtained diamonds on credit, which he promptly sold at a considerable loss for cash" (1st Op. at 7). He held, as a matter of fact, that "an entire series of such transactions [selling below cost] is the clearest indication of an intention to defraud. Instead of kiting checks, the bankrupt was in effect kiting diamonds using the proceeds of his

---

1. § 14c reads in pertinent part as follows:
   "(c) The court shall grant the discharge unless satisfied that the bankrupt has . . . (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; . . ."

below-cost sales to meet various notes as they fell due. As in all kiting schemes, there came a point where the pressure built up and he could no longer meet the note payments." *Id.* at 7–8.

The ultimate finding was that "during the period subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy herein, the bankrupt transferred certain of his property consisting of diamonds to various persons [naming purchasers from him] with intent to defraud certain of his creditors [the vendors]." The conclusion was, as indicated, that the bankrupt was guilty of conduct which, pursuant to Bankruptcy Act § 14c(4), bars his discharge.

On remand by this Court the Referee held a further hearing. Referee Herzog adhered to his earlier decision denying the discharge but he made additional findings. He found that the bankrupt freely admitted the acts charged, but that he claimed that he was without intent to hinder, delay or defraud creditors.

The bankrupt, at the second hearing, testified about ten more transactions in which the persons who bought for cash at a price lower than the bankrupt's cost were the *very* creditors he is charged with defrauding. His purpose was to show that the "defrauded" vendors knew that the bankrupt was selling below cost.

Referee Herzog, conceding that actual fraud as distinguished from constructive fraud must be proved, found "actual fraud" present "not in any isolated transaction, but in the entire series of transactions, in a course of conduct dating back at least one year prior to the date of bankruptcy" (2nd Op. at 6).

Holding that the burden of ultimate persuasion that the allegations of the specification were untrue had shifted to the bankrupt, Gunzberg v. Johanneson, 300 F.2d 40 (5 Cir. 1962), the Referee decided that the bankrupt had failed to sustain that burden. On the contrary, the Referee found that "there existed

the intent to defraud the creditors at the end of the line" (2nd Op. at 9).

All proceeds of the bankrupt's sales for cash were deposited in his business bank account and used to pay notes held by trade creditors.

The bankrupt relies on the circumstance that some of the vendors themselves actually bought from him at prices below his cost. The thrust of the argument is that the vendors were not defrauded, but knowing of the bankrupt's plight, had charged him prices above the market and had taken a calculated gamble.

In reviewing the fifteen transactions, the bankrupt notes the following: (a) no sales were made of merchandise held on memorandum; (b) all purchases were made on long-term credit at prices which were obviously considerably above the market prices; (c) in at least seven transactions the vendors or creditors were paid in full prior to the bankruptcy proceedings; (d) in two instances of the seven paid-in-full transactions the transactions occurred more than a year before bankruptcy; (e) in three instances payments on account were made; and (f) in the remaining transactions no payments were made because when the payments became due the bankrupt had already ceased doing business or bankruptcy proceedings had been instituted.

The Referee substantially found all these facts, except that he did not find either way on the point that the purchase prices paid by the bankrupt were "obviously" considerably above the market price.

■ To bar a discharge under § 14c(4) there must be an actual intent to hinder, delay or defraud his creditors. See Halpern v. Schwartz, 426 F.2d 102, 104 (2 Cir. 1970); In re Pioch, 235 F.2d 903 (3 Cir. 1956); In re Simon, 197 F. Supp. 301, 303 (E.D.N.Y.1961), aff'd, 299 F.2d 853 (2 Cir. 1962). Of course, such intent may be proved by circumstantial evidence. See Burnett v. Medford, 274 F.Supp. 845 (E.D.Pa.1967);

Michael Rose Productions, Inc. v. Loew's Inc., 143 F.Supp. 606, 608 (S.D.N.Y. 1956); *cf.* In the Matter of Moran, 456 F.2d 1030 (3 Cir. 1972).

"Cash sales of property by the debtor are not prohibited whether made for the purpose of meeting an indebtedness or in the ordinary course of business. Cash sales are clearly transfers but the existence of any fraudulent intent to put property beyond the reach of creditors is strongly negated by the receipt of cash." 1 Collier ¶ 3.102 [2] (footnotes omitted).

■ Where the claim is that a transfer was made with intent to defraud creditors, the transfer may be shown to have been made for an inadequate consideration. 7 Remington On Bankruptcy (1955) § 3157. But merely *selling inventory below cost to meet maturing debts would not be a transfer with intent to hinder, delay or defraud creditors,* as Referee Herzog stated. So, too, if the bankrupt had merely taken diamonds he purchased and given them to a creditor for payment of an antecedent debt that would have amounted to a preference but not necessarily to a fraudulent conveyance. Hayslip v. Long, 227 F.2d 550, 553 (5 Cir. 1955). Here, the debtor sold the diamonds and used the proceeds rather than the diamonds themselves to prefer the creditor.

■ The question is whether the continuous course of conduct of the bankrupt in purchasing on credit and immediately selling for cash at a loss establishes that the bankrupt "transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay or defraud his creditors." Bankruptcy Act § 14c(4).

There is no authority cited by the distinguished Referee or by the parties which is directly in point. If the essence of the fraud is the sale for an inadequate consideration, the objective inadequacy of the consideration paid by the purchaser to the bankrupt has not been proved. In a market like the wholesale diamond market there must, of necessity, be at least two prices, one for sales on credit, the other for cash sales. The former must include what is in effect a premium for credit insurance. How large the spread should be is not disclosed in the record. Moreover, diamonds are not fungible in quality and one man's judgment does not always coincide with another's respecting the value of a particular parcel of diamonds. This means that after the diamonds are dispersed it is hard to get an expert opinion on market price except for certain standard sizes.

The man who buys for cash and sells on time can sometimes make some profit because of the differing terms of sale. *It does not work the other way.* There is no proof, however, that the bankrupt sold for prices that were *objectively* not fair consideration, for the fair price on a cash purchase may have been no more than what Freudmann got for the goods. What Freudmann paid for the goods himself may have been an excessive price which he was willing to pay to get the goods in his hands for conversion to needed cash. He may actually have sold for an adequate cash price on the market, though for him it was a sale at a loss. *Cf.* Roth v. Fabrikant Bros. Inc., 175 F.2d 665, 667–668 (2 Cir. 1949; discussion of this problem by Judge A. N. Hand).

The Referee in his first opinion found that the bankrupt had an actual intent to defraud the vendor when the bankrupt immediately made a transfer of the merchandise bought for "inadequate consideration." When the bankrupt proved that he had actually paid some of these vendors in whole or in part, indicating that he presumably had no intent to fail to pay them for the particular purchases, the Referee clarified his reasoning to make the "defrauded" creditors the creditors who stood "at the end of the line."

■ Actual intent to defraud does not require an intent to defraud all creditors. Kolesinski v. Mashey, 127 F.2d 528 (2 Cir. 1942). It is enough if there is intent to defraud some creditors. And creditors "at the end of the line"

presumably qualify as well as any other creditors. See Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931).

■ We should not elide the difficulty, however. In *every* bankruptcy it is the creditors "at the end of the line" who are stuck. Merely incidental harm to creditors, such as generally accompanies preferential transfers, for example, is not enough to bar discharge. See Coder v. Arts, 213 U.S. 223, 243, 29 S. Ct. 436, 53 L.Ed. 772 (1909). See Hayslip v. Long, *supra*. See In re Julius Bros., 217 F. 3 (CCA2 1914).

The particular bar to discharge here invoked is of ancient origin. It derives from the early Statute of Elizabeth dealing with fraudulent conveyances which included the words "intent to delay, hinder or defraud creditors." 13 Eliz.C. 5. These words are still in § 14c(4) of the Bankruptcy Act, as they were in the 1898 Act. "The real test of a fraudulent conveyance . . . is the unjust diminution of the debtor's estate." 1 Glenn, Fraudulent Conveyances and Preferences, § 195 at 348 (rev. ed. 1940).

The question whether a particular transfer is a fraudulent conveyance comes up in several ways in the Bankruptcy Act. It may be an act of bankruptcy under § 3a. It may be a transfer voidable by creditors and by the trustee under §§ 67d and e, and § 70e. It may bar a discharge under § 14c(4).

■ Thus, a transfer may not be voidable against a bona fide transferee for value and yet be intended by the bankrupt to defraud creditors. See Coder v. Arts, *supra*, 213 U.S. at 242, 29 S. Ct. at 443: ". . . it makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying. or defrauding creditors."

■ While the trustee here probably would not succeed in a proceeding under § 67 to recover the diamonds sold for cash because of inability to show inadequacy of consideration, that does not prevent the transfer from being one made with intent to defraud creditors. A transfer not voidable against a buyer under § 67e may still be a fraudulent transfer under § 14c(4).

■ So too a preferential payment for an antecedent debt is not a bar to a discharge, see Coder v. Arts, *supra*, but "a transaction may be invalid both as a preference and as a fraudulent transfer." Dean v. Davis, 242 U.S. 438, 444, 37. S.Ct. 130, 132, 61 L.Ed. 419 (1917). The issue turns on proof of actual intent to defraud creditors.

The circumstantial evidence of intent in the law of fraudulent conveyances has long been categorized by certain patterns of conduct called for convenience "badges of fraud." In the language of Glenn (1 Glenn, *supra*, § 307a at 535):

> "There are many badges of fraud . . . Each, like vice, needs but to be seen, but no court, when properly advised, will endure them. In passing, however, we will mention a few of these items of mercantile wrongdoing that indicate the debtor's bad condition, and the grantee's bad faith if the facts are known to him. Thus, the persistent selling of merchandise at a loss, purchasing goods by a system of check kiting for resale at any figure obtainable . . ."

The use of another man's goods for the payment of the prospective bankrupt's debts is a badge of fraud. The rationale is that the intentional depletion of the bankrupt's estate by transfers within a year of bankruptcy is an intentional defrauding of creditors. And depletion of the estate is the likely corollary to a practice of buying dear and selling cheap. As the Referee put it, "An entire series of such transactions [selling below cost] is the clearest indication to an intention to defraud" (1st Op. at 7).

That there may be a fraudulent transfer with intent to defraud creditors without proving an absence of fair consideration may also be gleaned from the present statutory language of § 67d(2) (11 U.S.C. § 107d(2)). The present sec-

tion divides fraudulent transfers into four parts: (a) if made by a debtor who is thereby rendered insolvent; (b) if the property remaining leaves him with unreasonably small capital; (c) if the debtor believes he will incur debts beyond his ability to pay as they mature; and (d) if made with actual intent to hinder, delay or defraud other existing or future creditors.

In each of the first three categories there is a statutory element requiring that the transfer be made "without fair consideration." In the case of the fourth category the old fraudulent conveyance language is used, and there is no requirement that the transfer be "without fair consideration" so long as there is an actual intent to defraud.

While I cannot find that there is adequate proof in this record that the cash sales were "without fair consideration," it is my opinion that the evidence adequately supports Referee Herzog's ultimate finding that the bankrupt actually intended to defraud his creditors by fraudulent transfers. Discharge was properly denied.

The petition for review is denied.