**In the Matter of Raymond T. REININGER–BONE, Debtor.**

**Stephanie CATES–HARMAN, Trustee in Bankruptcy, Plaintiff,**

**v.**

**Raymond T. REININGER–BONE and Blanch D. Bone, Defendant.**

**Bankruptcy No. 86–105.
Adv. No. 86–189.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 29, 1987.

Jary C. Nixon, Tampa, Fla., for plaintiff.

Stuart Symington Smith, Brooksville, Fla., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration are several claims set forth in the Amended Complaint filed by Stephanie Cates-Harman, Trustee (Trustee) of the above-captioned Chapter 7 case. In Count I, the Trustee seeks to set aside a transfer by

**54**

Raymond Reininger-Bone, the Debtor (Debtor), to one Blanch Bone (Bone), a Defendant, as fraudulent pursuant to § 548 of the Bankruptcy Code. The interest transferred was the Debtor's one-half interest in certain real property. The Trustee's claim in Count II is brought pursuant to the Uniform Fraudulent Conveyance Act of the State of Florida. Fla.Stat. 726.01 et seq. (1987). In Count III, the Trustee originally sought to set aside the same transfer on the ground that it is voidable pursuant to § 544 of the Bankruptcy Code. However, the claim set forth in Count III was found to be legally insufficient, and accordingly Count III was dismissed.

Based on the remaining claims, the Trustee seeks a Judgment declaring the transfer under consideration to be fraudulent, or in the alternative, a judgment for the value of the property transferred plus the imposition of sanctions for costs of the proceeding and interest from the date the Complaint was filed. The facts relevant to a resolution of this controversy as established at the final evidentiary hearing are as follows:

The Debtor and Bone, the Defendants, were never formally married, although they lived together and held themselves out as husband and wife. In 1980, the Defendants purchased the real property involved in this controversy. The Warranty Deed presented in connection with the property indicated that Bone was the Debtor's wife (Pl.'s Exh. # 1). The property was described as an unimproved parcel although it was occupied with structures used as the residence of the Debtor and Bone completed in 1981.

In 1982, Bone decided to add a garage apartment to the residence. In order to secure a Hernando County building permit, the Defendants decided to divide the parcel in half. A Quit Claim Deed executed on November 27, 1982, transferred half of the property to Bone from the Debtor and Bone. The property is described as follows:

The North 66 feet and the East 130 feet of Lot 64, Oakwood Acres as per Plat

Book 15, Pages 98–103, Records of Hernando County, Florida. (Pl.'s Exh. # 2).

It was intended that the remainder of the property be transferred to Bone after the garage apartment was constructed. However, the second transfer was not accomplished at that time.

While the Debtor still held an ownership interest in the remaining real property, two Judgments were rendered against him. On October 29, 1980, one Smith obtained a Judgment against the Debtor in the amount of $1,490.00 and costs of $42.00. On December 13, 1984, Paul and Viola Rindes obtained a Judgment against the Debtor in the amount of $1,139.12 and $36.50 in costs (Pl.'s Exh. # 6). Then on October 8, 1985, the Debtor transferred by Quit Claim Deed to Bone his one-half interest in the following described real property:

Lot 64, OAKWOOD ACRES as per plat thereof, recorded in Plat Book 15, Pages 98–103, Public Records of Hernando County, Florida. (Pl.'s Exh. # 3).

This is the transfer which the Trustee seeks to avoid as fraudulent pursuant to § 548 of the Bankruptcy Code and Fla.Stat. § 726.01 (1987). It does not include the North 66 feet and the East 130 feet of Lot 64 which had been transferred by the Debtor to Bone on November 27, 1982 (Pl.'s Exh. # 2).

The claim set forth in Count I is an alleged fraudulent transfer within one year, voidable pursuant to § 548 of the Bankruptcy Code. Sections 548(a)(1), (2)(A), and (B)(i) of the Bankruptcy Code provides as follows:

(a) the trustee may avoid any transfer of an interest of the debtor in property, or an obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

The record clearly indicates that the transfer of the real property on October 8, 1985, occurred within one year before the date of filing of the Petition on January 13, 1986. Thus, the initial requirement applicable to § 548(a)(1), (2)(A), and (B)(1) is met.

In order to avoid a transfer under § 548(a)(1), the transfer must be made "with actual intent to hinder" a creditor. However, actual intent to defraud is rarely subject to direct proof. Courts have established "badges of fraud" to establish the requisite actual intent to defraud. See *In re Freudmann*, 362 F.Supp. 429 (S.D.N.Y. 1973), *aff'd*, 495 F.2d 816 (2d Cir.1974). The Bankruptcy Court in the case of *In re May*, 12 B.R. 618, 627 (Bankr.N.D.Fla. 1980), characterized the "badges of fraud" as follows:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of events and transactions under inquiry.

See also *In re Vecchione*, 407 F.Supp. 609 (E.D.N.Y.1976). *In re Cadarette*, 601 F.2d 648 (2d Cir.1979).

■ It is well established that initially the burden of proving all the requisite elements necessary to set aside a transfer as fraudulent under § 548(a)(1), (2)(A) and (B)(1) is on the party disclaiming the particular transfer. However, it is also well recognized that when the transfer is made without adequate consideration, it raises a presumption of fraudulent intent. In the case of *In re Nemerov*, 134 F.Supp. 678 (S.D.N.Y.1955), the Court held that this presumption establishes a prima facie case and shifts the burden of proof to establish the absence of fraudulent intent to the Debtor. See also *In re Loeber*, 12 B.R. 669, 4 C.B.C.2d 448 (Bankr.N.J.1981) (citing *Nemerov, supra); In re Wolf*, 165 F.2d 707 (3rd Cir.1948).

■ This Court is satisfied that the October 8, 1985, transfer from the Debtor to Bone lacked adequate consideration and that the Debtor failed to establish the absence of fraudulent intent. The Defendants alleged that the consideration for the 1985 transfer was paid to the Debtor sometime in 1980 by way of assignment of a mortgage owned by Bone on her former residence in Broward County to a third party for the support of the Debtor's three minor children. This assigned mortgage was valued in the amount of $13,000.00 with 10% interest. The Defendants did not produce a copy of this assignment into evidence. This Court is satisfied that the 1980 assignment, if in fact an assignment occurred, was at most a gift. There is no evidence of any obligation by the Debtor to pay Bone for this assignment, and therefore, this Court finds that the alleged assignment was not and will not be determined to be adequate consideration by the Debtor for the 1985 transfer.

In addition, the Debtor owned a one-half interest in the real property transferred which in 1985, was listed for sale under an exclusive listing agreement for $140,000.00. The existing mortgages on the property total the approximate amount of $45,-000.00. (Pl.'s Exh. #7, 8 and 19). From all this it follows that the Debtor's half share of equity would at least equal approximately $47,500.00. Since when the Debtor transferred his interest to Bone and received nothing in exchange, it is evident that consideration is lacking.

The second "badge of fraud" is a familial relationship between the parties to the

transfer. It is without dispute that the Debtor resided with the transferee Bone and that they held themselves out to be husband and wife. Despite the fact that the Defendants resided together without the formalities required for a valid marriage, this Court is satisfied that a close relationship existed which precluded an arms-length transaction.

The Debtor continued to retain physical control of the subject real property subsequent to the transfer. When the property was purchased on August 1, 1980, it was titled in both Defendants' names (Pl.'s Exh. #1) and they both resided there. The Debtor still resided there as of the date of trail. Even the electric utility service at the residence remained in the Debtor's name. The foregoing facts establish the Debtor's actual intent to defraud his creditors.

Even without this Court's finding of fraudulent intent on the part of the Debtor, the Trustee has met her burden of proof under § 548(a)(2)(A) and (B)(i). Actual fraudulent intent is not necessary to avoid a transfer as fraudulent under these subsections if, within one year of the filing of the Petition, there is a transfer for less than reasonable equivalent value by an insolvent debtor. See *In re Energy Savings Center, Inc.*, 54 B.R. 100 (Bankr.E.D.Penn. 1985); *In re Ear, Nose & Throat Surgeons of Worcester*, 49 B.R. 316 (Bankr.D.Mass. 1985). There is hardly any doubt that the Debtor was rendered insolvent as a result of the transfer. The transfer effectively divested him of his only significant asset. In reiteration of this Court's finding above, the Debtor received less than a reasonable equivalent value for the transfer. While the Debtor claims that the value of his interest in the real property transferred did not exceed $8,000.00, the sole basis for this figure is the Debtor's valuation of his labor, performed in connection with the construction of the residence in 1980. Not only is the Debtor's valuation not supported by the record, it is contradicted by the facts of this case. Since the requirements of § 548 of the Bankruptcy Code have been met, this Court finds that the transfer may be avoided by the Trustee.

This Court is further satisfied that Count II of the Transtee's Complaint sets forth a valid claim under the Uniform Fraudulent Conveyances Act of Florida, Fla.Stat. § 726.01. This Statute permits the avoidance of any transfer made with "intent to delay, hinder or defraud creditors." The Debtor offered several reasons for transferring the property to Bone. First, he maintained that he was carrying out his original intention to transfer all the property by execution of the Quit Claim Deed on November 27, 1982. (Pl.'s Exh. #2) Second, he stated that he transferred the remaining property to Bone for the sole purpose of removing his name from the tax rolls. Despite the Debtor's arguments, the Court finds that the Debtor intended to defraud his creditors.

At the time of the transfer the Debtor knew that Judgments were already outstanding against him. After being informed by a realtor, Elsie Hadley, that a portion of the homestead property had not been transferred, he executed a Quit Claim Deed. The deed was executed on October 8, 1985, and transferred the Debtor's one-half interest to Bone. In order to avoid payment of the outstanding Judgments, at the time of closing the Debtor and Bone signed a false affidavit. (Pl.'s Exh. #10) The affidavit falsely recited that the Defendants had remained continuously married from July 24, 1984 through the date of closing on January 15, 1985. "When the legal effect of a conveyance is to defraud creditors, no matter wnat the actual intention may have been, it is fraud in law." *Stelle v. Dennis*, 104 Fla. 384, 140 So. 194 (Fla.1932); see also *In re Flanzbaum*, 10 B.R. 420 (Bankr.S.D.Fla.1981). The Court finds that the transfer had the effect of defrauding the creditors.

Based on the foregoing, this Court finds and concludes that the transfer by the Debtor of the subject real property on October 8, 1985, by Quit Claim Deed to Bone was a fraudulent transfer and should be set aside pursuant to § 548(a)(1) and § 548(a)(2) and (B)(i) of the Bankruptcy Code. Furthermore, the Trustee has car-

ried her burden of proof under Fla.Stat. § 726.01. The Trustee herein is entitled to a Final Judgment cancelling, vacating and setting aside the transfer evidenced by Plaintiff's Exhibit # 3. This determination should not be construed to authorize the Trustee to sell the subject real property, pursuant to § 363(f) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.