**In the Matter of Robert L. LOEBER, Debtor.**

**Elayne LOEBER, Plaintiff,**

**v.**

**Robert L. LOEBER, Defendant.**

**Adv. No. 80–0163.**

United States Bankruptcy Court, D. New Jersey.

April 9, 1981.

Kleinberg, Moroney, Masterson & Schachter by James E. Masterson, Millburn, N. J., for plaintiff Elayne Loeber.

Mandelbaum, Salsburg, Gold & Lazris by Yale I. Lazris, East Orange, N. J., for defendant-debtor.

## OPINION

VINCENT J. COMMISA, Bankruptcy Judge.

On February 14, 1980 the debtor herein filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In the schedules filed by the debtor on February 29, 1980 Elayne Loeber, the plaintiff herein and the former wife of the debtor, is listed as an unsecured creditor having a claim of $75,000.00.

Thereafter on April 14, 1980 the plaintiff filed a complaint pursuant to the provisions of §§ 727 and 523 of the Bankruptcy Code.

The first count of the complaint seeks a denial of the discharge of the debtor by reason of a transfer of the debtor's property within one year before the filing of the bankruptcy petition, with intent to hinder, defraud or delay a creditor, as prohibited by the provisions of § 727(a)(2)(A).

The second count of the complaint alleges that the $75,000.00 debt is in the nature of alimony and non-dischargeable under the provisions of § 523(a)(5) of the Bankruptcy Code.

The third count seeks relief from the automatic stay provided by § 362 of the Bankruptcy Code. The relief sought would enable the plaintiff-former spouse to pursue a state court matrimonial action to enforce her rights in a settlement agreement entered into between the parties in a divorce proceeding in the State Court.

The fourth count alleges that the debtor filed the bankruptcy petition in bad faith and contends that he fraudulently transferred property within one year before the date the petition was filed, with the intent to hinder, defraud and delay the plaintiff. Plaintiff relies upon § 548 of the Bankruptcy Code in seeking to set aside the transfer in question as a fraudulent transfer.

The basis for the plaintiff's action is a settlement agreement entered into by the litigants in the divorce action entitled *Elayne Loeber v. Robert Loeber*, Superior Court of New Jersey, Chancery Division, Matrimony, Docket No. M–7499–73. The settlement agreement was placed on the record in the Superior Court of New Jersey on December 11, 1978.

The settlement agreement provided that the plaintiff Elayne Loeber was to receive $75,000.00 in equal installments over a period of five (5) years, commencing December 15, 1978, together with interest thereon at the rate of eight (8%) per cent per annum. The defendant waived any right, title and interest in and to the family residence in South Orange, New Jersey and also waived any interest in a boat having a minimum value of $10,000.00. The settlement agree-

ment also provided that the plaintiff-spouse would be given a mortgage on three properties: (1) a condominium in Cocoa Plum, Florida, (2) a vacant tract of land in Florida and (3) the home in which the debtor presently resides with his present wife, and which is the subject property involved in the complaint herein.

Pursuant to the agreement, the debtor paid a total of $5,000.00 to the divorced wife, but never executed and/or delivered the mortgage on the above noted properties. The record of the hearing in the Superior Court of New Jersey indicates that the counsel for the wife stated that "Alimony will be waived and there will be a settlement with regard to the equitable distribution". The record also indicates that the wife, Elayne Loeber, stated that she understood that she was waiving her right to alimony. In her testimony before this Court, she stated that under the terms of the settlement, "[T]here was no alimony, there was a straight settlement."

As noted earlier, the debtor was to give his former wife a mortgage on the property he now occupies with his present wife, and known as # 8 Dogwood Drive, P. O. Long Valley, New Jersey. This property was conveyed to the debtor by a deed dated December 12, 1975, which deed recited that the conveyance was made to Robert Loeber, single.

After his divorce from Elayne Loeber in December 1978 the debtor married his present wife, Helga Loeber. He continued title in his name only until March 14, 1979 at which time he and Helga Loeber executed a deed to the property to themselves as tenants by the entirety.

It is this March 14, 1979 transfer that the plaintiff herein, Elayne Loeber, contends is the fraudulent transfer made to hinder, defraud or delay creditors.

The debtor contends that the March 14, 1979 transfer, which by its terms clearly states that it was intended to create a tenancy by the entirety, has at most a minimal impact on the rights of creditors. He alleges that since prior to the March 14, 1979 transfer, his present wife Helga Loeber had an inchoate dower interest in the property; the March 1979 transfer did not reduce assets available for distribution to his creditors.

Section 523(a)(5) provides that a debt to a spouse for alimony or a liability in the nature of alimony shall not be discharged in bankruptcy proceedings brought under the present Code.

■ There can be no question but that debts and payments due arising out of a property settlement agreement are dischargeable in bankruptcy. *Matter of Adams*, 25 F.2d 640 (2d Cir. 1928); *Goggans v. Osborn*, 237 F.2d 186 (CA 9, 1952). The provisions of the Code make it clear that where the property settlement was in the nature of alimony, the debt is not dischargeable. See also *In re Alcorn*, 162 F.Supp. 206 (N.D.Cal.1958); *Matter of Hollister*, 47 F.Supp. 154 (S.D.N.Y.1942) *aff'd* 132 F.2d 861 (2d Cir. 1943).

Here, there is no evidence presented that the property settlement was in lieu of alimony or in the nature of alimony. The admission of Elayne Loeber that there was no alimony corroborated by the statement made in the Superior Court proceeding that there was no alimony, together with the lack of any evidence that the payments due were in the nature of alimony satisfy the Court that the debts are not excepted from discharge by the provisions of § 523(a)(5). See *In re Williams*, 3 B.R. 401, 6 B.C.D. 341 (Bkrtcy.N.D.Ga.1980).

■ Section 727, in pertinent part, provides:

*Section 727. Discharge*

(a) The court shall grant the debtor a discharge unless . . .

(2) the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred . . . or has permitted to be transferred . . .

(A) property of the debtor within one year before the date of the filing of the petition.

In order to justify the refusal of discharge, there must have been more than a

preferential transfer. If, under § 727(a)(2), a transfer is relied upon, it must be shown that there was actual transfer of the valuable property belonging to the debtor, which reduced the assets available to creditors and which was made with a fraudulent intent. 4 *Collier on Bankruptcy* (15th ed. 1980), ¶ 727.02(5), pp. 727–13, 717–14.

In order to determine whether the transfer reduced the assets available to creditors, we must establish the value of the estate to creditors had not the transfer been effectuated.

■ If the March 14, 1979 transfer had not occurred, the subject property would have become the property of the bankrupt estate, subject to the wife's inchoate dower interest.[1] 4 *Collier on Bankruptcy* (15th Ed. 1980), ¶ 541.07, pp. 541–33. Since state law controls the valuation of a dower interest, we look to R. 4:63–3 of the New Jersey Court rules for the proper method of calculating a gross sum in lieu of dower to determine the value of the present wife's dower interest. This method provides that the dower interest of Helga Loeber would be 41.1524 per cent of the net proceeds of the sale value of the premises in question.[2]

■ Here, the property was encumbered by a mortgage which attached prior to coverture and in such instances, the dower interest is junior to the mortgage. *Kaufman v. Kaufman*, 162 N.J.Super. 571, 394 A.2d 112 (App.Div.1978).

Pursuant to subsections 522(b)(1) and 522(d)(1) of the Bankruptcy Code, the real property would be exempt from claims of creditors in the amount of $7,500.00 as the debtor has elected to claim the federal exemptions provided by § 522(b)(1) and § 522(d).

■ Accordingly, from a sale[3] of the real property encumbered with a mortgage and a dower interest, there would be available to creditors the sum of $6,890.16.[4]

1. The right of dower was abolished in New Jersey by N.J.S.A. 3A:35–5, L.1979, C. 485, Sec. 1, which was approved on February 28, 1980 and, pursuant to L.1979, C. 485, Sec. 2 took effect 90 days thereafter. This enactment, therefore, has no application to the instant matter as it affects only the right of dower as to real property whereof a husband is seised after the effective date thereof, which is subsequent to the seisin of the real property during the coverture, herein. The dower interest considered herein is defined by N.J.S.A. 3A:35–1. The inchoate right of dower in New Jersey is a present, fixed, vested, valuable interest of a wife. See *Fire Guard Sprinkler Corp. v. Manolio*, 171 N.J.Super. 333, 408 A.2d 1353 (App. Div.1979), *aff'd* 85 N.J. 485, 427 A.2d 577 (1980).

2. R. 4:63–3(a) provides, "The Court shall calculate the value of the dower or other interest upon the basis of the net proceeds of the sale, above costs and expenses, applying the principles of life annuities and using the table printed in the Appendix to these Rules. Except in unusual circumstances, the amount fixed by the Court shall not be greater than that arrived at under this paragraph."

Helga Loeber was born on July 1, 1939 and was forty years old on the date this petition was filed. The critical time as of which property comprising the estate is to be determined, and the rights of others connected with the estate adjusted, is the date upon which the petition is filed. 4 *Collier on Bankruptcy*, (15th ed. 1980), para. 541.04(4), pp. 541–21 to 541–

22. The petition was filed on February 14, 1980.

R. 4:63–3(b) provides that the Court shall also calculate the value of the dower interest by utilizing the clear yearly income of the property. No evidence was adduced as to the income this property could produce if it were, in fact, income producing property, nor is it the type of property commonly used for the production of income.

3. Subsections 363(b) and (g) of the Code make clear that the trustee may sell the realty free and clear of any vested or contingent rights in the nature of dower or curtesy. Subsection (j) provides that the trustee is to distribute the proceeds to the nondebtor spouse according to his or her interest in the property.

4. This figure is arrived at as follows:

| | |
|---|---|
| $65,000.00 | (accepting the value appearing in the schedules filed by the debtor) |
| −40,546.73 | (amount due mortgage as listed in debtor's sched.) |
| $24,453.27 | |
| −10,063.11 | (41.1524%; amount due Helga Loeber pursuant to § 363(f)) |
| $14,390.16 | |
| − 7,500.00 | (exemption, § 522(d)(1)) |
| $ 6,890.16 | (amount available to creditors) |

For a similar computation, see *In re Jordan*, 5 B.R. 59, 61, n.6, (Bkrtcy.D.N.J.1980).

The applicable percentage used to determine the dower interest is applied to the net proceeds of a sale of the realty. In computing net proceeds, the appropriate figure to which the

■ In computing the amount available for distribution to creditors after the transfer, establishing a tenancy by the entirety, it is noted that the interest of a debtor in a tenancy by the entirety established by local law is property of the bankrupt estate by reason of § 541(a)(1) of the Code. 4 *Collier on Bankruptcy*, (15th ed. 1980) ¶ 541.07, p. 541–33.[5]

Pursuant to subsections 363(b) and (h) of the Code, the trustee may sell the estate's interest and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant by the entirety, only if:

(1) partition in kind of such property among the estate and such co-owners as is impractible;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission or distribution, for sale of electric energy or of natural or synthetic gas for heat, light or power.

■ Assuming, for the moment, that these preconditions to a sale of the entireties' property can be satisfied, the assets available to creditors upon a sale of the realty would be approximately $4,726.63.[6]

---

pertinent percentage is applied is the amount arrived at after subtracting from the proceeds of sale the sums necessary to satisfy pre-coverture mortgages. *Campbell v. Campbell,* 140 N.J.Eq. 144, 151, 53 A.2d 630 (Ch.1947); *Burnet v. Burnet* 46 N.J.Eq. 144, 18 A. 374 (Ch. 1840); 7 Clapp, *New Jersey Practice* § 1659. See also *Shilowitz v. Shilowitz,* 115 N.J.Super. 165, 186, 278 A.2d 517 (Ch.Div.1971); R. 4:63–3.

**5.** Under prior law, the determination of the bankruptcy estate's interest in property held by the debtor as a tenant by the entirety has been recognized as a difficult intersection of a highly articulated statutory scheme, the bankruptcy laws and an ancient common law concept, tenancy by the entireties. Craig, *An Analysis of Estates by the Entirety in Bankruptcy,* 48 Am. Bankr.L.J. 255 (1974). See also *In re Ford,* 3 B.R. 559 (Bkrtcy.D.Md.1980).

**6.** This figure is arrived at as follows:

| | |
|---|---|
| $65,000.00 | (accepting the value in the schedules filed by the debtor) |
| −40,546.73 | (amount due first mortgagee as listed in debtor's schedules) |
| $24,453.27 | |
| −12,226.64 | (½; interest of Helga Loeber as tenant by the entirety) |
| $12,226.63 | |
| − 7,500.00 | (exemption pursuant to § 522(d)(1)) |
| $4,726.63 | (amount available for distribution) |

For a similar computation, see *In re Jordan, supra,* p. 62, n. 6.

The mortgagee's interest must be satisfied prior to any interest of Helga Loeber as tenant by the entirety. Estates in entirety cannot be created at the expense of creditors. Where the circumstances are such that it would be fraudulent as to creditors of the husband to take the entire title in the name of the wife, it is no less a fraud on them for the title to be taken in the name of the husband and wife, jointly. 41 C.J.S. *Husband and Wife,* § 34 pp. 475–6. The range of claims which will constitute one a creditor so that he may assail a fraudulent turning of the assets into estates by the entireties is practically as broad as the field in which the law will award damages. At the time of transfer, the obligation need not be due, absolute, liquidated or even known to the claimant. 7 A.L.R.2d § 2, p. 1107.

Pursuant to subsection 363(j), the trustee would distribute the proceeds of such a sale to the non-debtor spouse according to her interest in the property. Upon the liquidation of the entireties property, the proceeds cease to be held by the entirety, but instead are held as tenants in common. *Fort Lee Savings and Loan Association v. Le Butti,* 55 N.J. 532, 264 A.2d 33 (1970), *revsg. on dissent* 106 N.J.Super. 211, 254 A.2d 804 (App.Div.1958); *Dorf v. Tuscadora Pipeline Co.,* 48 N.J.Super. 26, 136 A.2d 778 (App.Div.1958). Upon a division, severance or sale, barring a prior agreement to the contrary, the co-tenants share equally. *Leonard v. Leonard,* 124 N.J.Super. 439, 443, 307 A.2d 625 (App.Div.1973).

As observed above, the Court is utilizing the federal exemptions and not the alternatively available exemptions of subsections 522(b)(2)(A) and (B) because the schedules filed by the debtor indicate that he had elected the same.

It is clear that, by the transfer, the distributable estate to creditors was reduced from $6,890.14 to $4,726.63.

The transfer in question not only reduces the amount of the estate available for distribution, but also may deny the trustee in bankruptcy the right to dispose of such property by sale.

It is noted that the interest of a debtor in a tenancy by the entirety, as established by local law, is the property of the bankrupt estate, pursuant to § 541(a)(1) of the Code. 4 *Collier on Bankruptcy* (15th Ed. 1980), ¶ 541.07, p. 541–35.

Subsections 363(d) and 363(h) of the Code grants the trustee the right to sell the estate's interest and the interest of any co-owner in property which the debtor had an interest immediately before the filing of the petition. This right applies to property in which the debtor had an undivided ownership interest such as a tenancy by the entirety. See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 364; Senate Report No. 95–989, 95th Cong. 2d Sess. (1978) 56–7, U.S.Code Cong. & Admin.News 5787. This right to sell is limited by the provisions of § 363(h) which provides in pertinent part that the trustee may sell only if "partition in kind of such property among the estate and such co-owners in impracticable" . . . and "the benefit to the estate of a sale of such property free of the interest of the co-owners outweighs the detriment, if any, to such co-owners".

In considering the above tests, we note the decision of the New Jersey Supreme Court in the matter of *Newman v. Chase*, 70 N.J. 254, 359 A.2d 474 (1976), where the court considered substantially the same questions. In *Newman v. Chase, supra,* the plaintiff had purchased from the trustee in bankruptcy all of the debtor's interest in certain property owned by the bankrupt and his wife as tenants by the entirety. The purchaser then attempted to partition the property and eventually to sell his interest in the same. The court stated that partition would not automatically be denied, but in doing so, stated that:

" . . . But where, as in the present case, a bankrupt husband lives with his young family in a modest home, we hold that it is within the equitable discretion of the Court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy." at 266, 359 A.2d 474.

It is clear that a similar analysis might be made in this case, thereby placing the property beyond the trustee's ability to liquidate assets for distribution to creditors. See also, 7 A.L.R.2d 1004.

Thus, the March 14, 1979 transfer, creating the tenancy by the entirety, not only reduced the value of the bankruptcy estate but, pursuant to § 363(h)(3), may have placed the real estate beyond the power of the trustee to liquidate same.

In order to sustain a finding of fraud under § 727(a)(2) and § 548, it is essential to prove actual intent to defraud; constructive intent is insufficient. *In re Pioch*, 235 F.2d 903, 905 (3rd Cir. 1956). However, where property is transferred to relatives, the transfer will be subject to close scrutiny and "the relationship of the parties in conjunction with other circumstances will often make the trustee's case compelling notwithstanding the absence of direct evidence of fraud." 4 *Collier on Bankruptcy*, ¶ 548.02, p. 548–39. See also *Levy v. Bukes*, 65 F.Supp. 494 (W.D.Pa. 1946).

Here, the transfer was made without any consideration and where property of value is transferred without consideration, it raises a presumption of actual fraudulent intent. 4 *Collier on Bankruptcy* (15th Ed. 1980), ¶ 727.02, p. 727–9. This presumption establishes a *prima facie* case, and shifts the burden of proof to establish the absence of a fraudulent intent to the debtor. *In re Nemerov*, 134 F.Supp. 678, 680 (S.D.N.Y.1955).

The case of *In re Wolf*, 165 F.2d 707 (3rd Cir. 1948) illustrates the above rule of law. There, the debtor had title to certain property in himself, alone. Prior to the filing of the bankruptcy petition, he transferred the

property to himself and his wife, as tenants by the entirety. At the bankruptcy hearing, the wife and the bankrupt sustained the burden of proof that the bankrupt had no actual intent to defraud, delay or hinder creditors.

 Here, neither the bankrupt nor his wife has offered any testimony to defeat the presumption of actual fraudulent intent. No attempt was made to carry the burden of rebutting the inference that the transfer made without consideration was presumed to be fraudulent.

In view of the above, this Court finds that the transfer of the real estate was made with the intent to hinder, delay and defraud creditors.

Submit an order in accordance with the above Opinion.